UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LASHAWNA JACKSON

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 09-13900

HON. ARTHUR J. TARNOW
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## **REPORT AND RECOMMENDATION**

Plaintiff Lashawna Jackson brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

## **PROCEDURAL HISTORY**

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on February 1, 2007, alleging disability as of January 14, 2007 (Tr. 95-97, 103-105). After the initial denial of the claim, Plaintiff requested an administrative

hearing, held on January 23, 2009 (Tr. 29). Administrative Law Judge ("ALJ") Dean C. Metry presided. Plaintiff, represented by Joseph Houle, testified, as did Vocational Expert ("VE") Annette K. Holder (Tr. 33-42, 43-50). On May 13, 2009, ALJ Metry found that although Plaintiff was unable to return to her past relevant work, she could perform a limited range of unskilled, exertionally light and sedentary work (Tr. 15-16). On August 7, 2009, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision in this Court on October 2, 2009.

## BACKGROUND FACTS

Plaintiff, born December 15, 1977, was age 31 when the ALJ issued his decision (Tr. 95). She graduated from high school and worked previously as a cashier, dietary aide, and housekeeper (Tr. 118, 122). She alleges disability as a result of leg ulcers and sebaceous cysts (Tr. 117).

### A. Plaintiff's Testimony

Plaintiff testified that she lived with her mother, father, brother, and nine-year-old son, adding that she was currently expecting a second child (Tr. 33-34). She reported previous work as a home health aide and cashier (Tr. 35). She indicated that she stopped working as a result of leg ulcerations and infected sebaceous cysts on her legs, neck, arms, and trunk (Tr. 36-37). Plaintiff testified that she saw a specialist for treatment of the cysts twice a week at which time the lesions were cleaned and wrapped (Tr. 38). She alleged that the leg wrappings impeded her ability to walk, noting that she was unable to walk more than one hundred feet before experiencing leg tingling and swelling (Tr. 39). She reported that

she coped with the condition by elevating her feet above chest level as advised by a treating physician (Tr. 39). She estimated that she needed to elevate her legs for 50 percent of her waking hours (Tr. 40). She also alleged difficulty lifting and performing manipulative functions (Tr. 41).

Plaintiff testified that she required help taking baths as a result of the leg wrappings (Tr. 41). She denied other self-care limitations (Tr. 42). Plaintiff, noting that she recently lost 20 pounds, reported a current weight of 291 pounds (Tr. 41). She testified that she socialized regularly but seldom drove (Tr. 42).

### B. Medical Evidence

#### 1. Treating Sources

In August, 2005, Plaintiff sought emergency treatment on two occasions for cellulitis[1] (Tr. 170, 174). She was given Keflex and released with instructions to continue conservative treatment (Tr. 171, 175). Imaging studies of the tibia and fibula taken the same month were unremarkable (Tr. 178). In September, 2005, Plaintiff was admitted to the hospital for the treatment of leg ulcers (Tr. 159). The condition was initially unresponsive to antibiotics (Tr. 160). Plaintiff denied using alcohol, but admitted to cigarette and marijuana use (Tr. 160). She was discharged five days later after undergoing excision and debridement procedures (Tr. 159). August, 2006 imaging studies of the cervical spine revealed a "loss of cervical

---

[1]Cellulitis is defined as "a common, potentially serious bacterial skin infection." http://www.mayoclinic.com/health/cellulitis/DS00450. Left untreated, cellulitis can spread to the lymph nodes and bloodstream. *Id.*

lordosis . . . due to muscle spasms" but otherwise normal results (Tr. 176, 206). The same month, treating notes show that a leg ulcer had "spontaneously reopened" (Tr. 199). In October, 2006, an examination of the right elbow was negative for abnormalities (Tr. 200). The same month, Plaintiff complained of lower back pain (Tr. 203, 205). November, 2006 emergency room notes state that Plaintiff reported the reopening of leg ulcers (Tr. 168). She was discharged with instructions to contact her treating physician (Tr. 169). Treating notes from the following month note the absence of swelling or infection (Tr. 196).

January, 2007 treating records state that Plaintiff, morbidly obese, requested a work excuse for leg aches (Tr. 183, 191, 294). In February, 2007, Plaintiff sought emergency treatment for lightheadedness (Tr. 162, 228). Treating notes state that Plaintiff displayed leg ulcers which were not infected (Tr. 165, 228). She was discharged after an unremarkable physical exam (Tr. 162). The same month, treating physician Anna Ledgerwood noted that Plaintiff's conditions was being treating twice a week with antibiotics and Unna boots[2] (Tr. 184, 311). In March, 2007, emergency treatment notes indicate that Plaintiff sought medical care after experiencing a sharp head pain (Tr. 235). A CT of the head was negative for abnormalities (Tr. 240). The results of a spinal puncture were likewise unremarkable (Tr. 242).

In May, 2007, Jarsolaw Sawka, D.O. completed a form for state benefits indicating

---

[2] According to a website devoted to vascular treatment, "[a]n Unna boot is a moist gauze bandage made up of zinc oxide, calamine lotion and glycerine. It promotes healing, increases blood return to the heart and reduces infection." http://www.nmh.org/nm/centervd+venous+ulcer+treatments.

that leg ulcers creating "severe hygiene problems" would disable Plaintiff for one year (Tr. 317). He opined further that Plaintiff did not require help with personal care, household, or shopping activities (Tr. 317). The following month, a neurological exam was inconclusive (Tr. 300). September, 2007 treatment records show that Plaintiff sought emergency treatment for a neck abscess (Tr. 244). Treating notes indicate that she currently took Vicodin, Motrin, and Valium (Tr. 245). Plaintiff was kept overnight for observation (Tr. 253). Upon discharge, she was advised to clean and dress the wound twice a day (Tr. 249). An MRI of the cervical spine showed no spinal abnormalities but an "[a]bnormal bone marrow signal" (Tr. 331).

Plaintiff underwent the removal of another cyst in November, 2007 (Tr. 261). The same month, Plaintiff sought treatment for neck and right arm pain (Tr. 291). Rheumatologist Harpreet Sagar, M.D. observed "no evidence of connective tissue disease or inflammatory arthritis" (Tr. 292). Plaintiff reported some cervical spine pain on performing range of motion exercises "secondary to the sebaceous cyst" (Tr. 292). Plaintiff exhibited a modestly limited range of right shoulder motion (Tr. 292).

In January, 2008, Dr. Ledgerwood reported that Plaintiff's leg ulcerations were "significantly better" (Tr. 347). March, 2008 treating notes state that Plaintiff experienced "degenerative spine disease [with] somatization/chronic pain syndrome/fibromyalgia" (Tr. 349). In April, 2008, Plaintiff received emergency treatment for abdominal pain (Tr. 270). She returned four days later, reporting lightheadedness (Tr. 284). A visual examination and EKG were both normal (Tr. 287). The same month, Dr. Sagar opined that Plaintiff's upper

extremity joint pain was secondary to a neck cyst (Tr. 293). An EMG was negative for abnormalities (Tr. 295). Dr. Sawka again found Plaintiff disabled for a period of one year, but no limitation in her ability to perform self-care, household, or shopping activities (Tr. 350). Plaintiff expressed concern that she would be required to attend a retraining program, indicating that chronic pain prevented her from seeking work (Tr. 352).

In July, 2008, Dr. Sagar noted that Plaintiff obtained good results with Vicodin Extra Strength and Elavil (Tr. 360). Dr. Sagar again opined that shoulder pain was created by "the surrounding infected skin" rather than connective tissue disease or inflammatory arthritis (Tr. 361). The same month, a pregnancy test was positive (Tr. 364).

### 2. A Non-Examining Source

An April, 2007 Physical Residual Functional Capacity Assessment conducted on behalf of the SSA found that Plaintiff was capable of lifting 20 pounds frequently and 10 pounds occasionally; sitting, standing, or walking for six hours in an eight-hour workday; and pushing and pulling without limitation (Tr. 211). The Assessment limited Plaintiff to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling (Tr. 212). She was precluded from climbing of ladders, ropes, or scaffolds (Tr. 212). The Assessment found the absence of manipulative, visual, communicative, or environmental limitations, noting treating records showing a normal gait and vital signs (Tr. 212).

### C. Vocational Expert

VE Annette K. Holder classified Plaintiff's former work as a cashier as semiskilled

at the light exertional level and work as a dietary aide as unskilled and medium[3] (Tr. 43). The ALJ then posed the following set of limitations to the VE, taking into account Plaintiff's age, education and work experience:

> "light work . . . further restricted by this hypothetical individual's need to sit, to sit and stand and having a need to have no more than frequent reaching with both upper extremities. [Could] that person . . . return to any of the past work that Ms. Jackson has performed ?"

(Tr. 46). The VE testified that based on the limitations, the individual would be unable to perform any of Plaintiff former jobs but could perform the light, unskilled work of an information clerk (1,100 positions in the regional economy) and assembler (3,200) (Tr. 46). The VE testified further that if the individual were additionally limited to only occasional reaching in the upper extremities, she would be unable to perform any exertionally light jobs but could perform the sedentary work of a visual surveillance monitor (1,000) (Tr. 46). The VE stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 46). She found that if Plaintiff's professed need to elevate her legs 50 percent of the time were fully credited, Plaintiff would be precluded from all gainful employment (Tr. 47).

   D.   **The ALJ's Decision**

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairments of bilateral leg ulcers, sebaceous cysts, and obesity, but that none of the conditions met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 10). The ALJ concluded that although Plaintiff could not perform her past relevant work, she retained the Residual Functional Capacity ("RFC") for light work, with a limitation to frequent (as opposed to *constant*) reaching and a sit-stand option (Tr. 11). Citing the VE's job numbers, *see above*, the ALJ found that Plaintiff could work as an information clerk and assembler (light) and surveillance monitor (sedentary) (Tr. 15).

The ALJ found that Plaintiff's allegations regarding the "intensity, persistence and limiting effects" of her condition were "not credible to the extent they [were] inconsistent with the . . . residual functional capacity assessment" (Tr. 12). He noted that Plaintiff's treatment had been conservative, and imaging studies had yielded consistently unremarkable results (Tr. 12).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401,

91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Hypothetical Question and Residual Functional Capacity[4]

Plaintiff argues that the ALJ's hypothetical question to the VE did not account for all of her work-related impairments. *Plaintiff's Brief* at 8-11, *Docket #8.* Plaintiff faults the ALJ for omitting a number of the postural restrictions found in the April, 2007 Residual Functional Capacity Assessment. *Id.* She notes that the hypothetical question, as well as the RFC found in the administrative opinion, do not include the restrictions on climbing, balancing, stooping, kneeling, crouching, and crawling found in the Assessment. *Id.* (Tr. 11, 212). She also contends that given her skin condition, the hypothetical limitations ought to have included a clean environment. *Id.* at 10.

*Varley v. HHS,* 820 F.2d 777, 779 (6th Cir. 1987), sets forth the Sixth Circuit's requirements for a VE's testimony. "Substantial evidence may be produced through reliance

---

[4]

Plaintiff does not argue that the ALJ neglected to discuss his reasons for discounting Dr. Sawka's "disability" opinions (Tr. 317, 350) but instead, contends in reference to the hypothetical/RFC argument that the Dr. Sawka's finding that the skin condition created hygiene problems ought to have been included in the hypothetical limitations. *Plaintiff's Brief* at 10. Any issue not raised directly by Plaintiff is deemed waived, and therefore any argument that the ALJ's treating physician analysis was inadequate is not properly before the Court. *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002). In any case, the administrative opinion contains an adequate analysis of Dr. Sawka's findings. Further, as discussed below, substantial evidence supports the existing hypothetical limitations and ultimate conclusion that Plaintiff was not disabled.

on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Id.* at 779 (internal citations omitted); *See also Webb v. Commissioner of Social Sec.* 368 F.3d 629, 632 (6th Cir. 2004). Because the VE's responses constitute the only evidence supporting a Step Five determination, the hypothetical question must be supported by record evidence. *Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 ( E.D. Mich. 2003)(Roberts, J.). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)).

Contrary to Plaintiff's argument, the ALJ was not required to adopt the April, 2007 findings. The Assessment's author, Muhammad Khalid, M.D., performing a non-examining evaluation on behalf of the SSA, did not have a treating relationship with Plaintiff. As such, the findings were "entitled to no special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)(*citing Atterberry v. Secretary of Health & Human Servs.,* 871 F.2d 567, 572 (6th Cir.1989)). Despite the fact that no obligation existed to either follow or discuss Dr. Khalid's conclusions, the ALJ explained his reasons for discounting the a portion of the Assessment:

> I assigned probative weight to the opinion because it is supported by the longitudinal evidence of record and the medical signs and findings. However, I did not adopt the postural limitations because the record does not show that such limitations are required. I did accommodate the claimant's complains of shoulder pain by limiting her to frequent reaching. I further reduced the

residual functional capacity to allow the claimant a sit/stand option, which is
a reasonable accommodation for the ulcers in her legs and her obesity.

(Tr. 14).

Moreover, substantively speaking, the ALJ did not err in omitting some of the limitations found in the April, 2007 Assessment from either the hypothetical question or the RFC found in the administrative opinion. First, Plaintiff's complaints of extreme upper extremity limitations are unsupported by imaging studies (Tr. 176, 200, 240, 242, 331287, 295). Second, Dr. Sagar found no evidence to support a diagnosis of either a connective tissue disease or arthritis (Tr. 292, 360). While the rheumatologist opined that Plaintiff's shoulder pain was attributable to a sebaceous cyst, treating records support the ALJ's conclusion that exacerbations of the skin condition and accompanying upper extremity pain were intermittent rather than continuous (Tr. 165, 196, 347). For the same reason, the omission of a "clean" work environment from the hypothetical restrictions does not constitute error.[5] Finally, even assuming that Plaintiff experienced ongoing upper extremity pain unattributable to either a skin or neurological condition, she reported that a combination of Vicodin and Elavil was effective in relieving her discomfort (Tr. 360).

More generally, Plaintiff's claims of disabling exertional and postural limitations are

---

[5]

Further, both the light position of information clerk and sedentary surveillance monitor job are "desk" positions, performed primarily in office settings. The combined 2,100 jobs in the regional economy constitutes a substantial number. *See Born v. Sec'y of H.H.S.*, 923 F.2d 1168, 1174 (6th Cir. 1990) (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). Thus, any error in omitting "clean environment" from the hypothetical limitations would be harmless.

contradicted by both her testimony and numerous treating source observations. Treating records and Plaintiff's own testimony indicate that medical problems did not prevent her from interacting successfully with her family, socializing on a regular basis, and seeking and obtaining adequate prenatal care (Tr. 33-34, 41-42, 364).

To be sure, the medical transcript supports the conclusion that Plaintiff experienced some degree of limitation as a result of her skin conditions and obesity. My recommendation to uphold the the ALJ's decision should not be read to trivialize those health concerns. Nonetheless, the finding that she was not disabled is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: November 18, 2010

___

### CERTIFICATE OF SERVICE

I hereby certify on November 18, 2010 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on November 18, 2010: **None.**

s/Michael E. Lang<br>
Deputy Clerk to<br>
Magistrate Judge R. Steven Whalen<br>
(313) 234-5217